Good morning, Your Honors. John Arascotta. I'm the attorney here representing Appellant Omar Ahmed Ayoub. At counsel table seated with me is my associate, Christine Aramini. Your Honors, in this case, if the court affirms the jury verdict and the lower court's decision under the facts of this case, in essence, this court will now be turning a specific intent crime, which 18 U.S.C. 2422B is, into a strict liability offense. We know this because we've seen through this court's guidance in the Meek case that Meek states that the intent required in this case, the mens rea, it must be focused on the subjective beliefs of the defendant. And what Meek states, though, is on one end, no longer and never will it have to be on the other side of the conversation. But Meek also says that the defendant, or the accused, must believe they are inducing a minor, and that that belief has to be an actual knowledge, and an actual belief. And the guilt only arises in what are legal and lawful conversations on the Internet, although sexually charged, when the guilt comes from the defendant's knowledge of what he intends to do, i.e., be with a minor. And in this case, the facts do not support that. And the court erred in its jury instruction, which I would like to address first. Because in the jury instruction, there's no addressing of the subjective knowledge that is needed from on behalf of the accused. The court does give the general knowledge instruction. We provided a further knowledge instruction which said that it is required by the government to prove the defendant believed he was chatting with a minor. Now, this is an area that has not been addressed throughout any of the circuits regarding these cases in Internet luring. The issue that has primarily been addressed is, does the issue of there's no need for it to be an actual minor on the other side. But we have yet to address, and no circuit has addressed, what is the intent that should be provided as a jury instruction to the jury regarding the subjective beliefs of the defendant. And we submit and we instructed here, correct me if I'm wrong, the government must prove the following five essential elements beyond a reasonable doubt. Third, that the defendant believed that such an individual was less than 18 years of age. Now, why is that defective? That is defective because it does not, as we analogize in our brief to the Powell decision which regards tax evasion or tax fraud, where this Court has said that a jury cannot substitute their objective beliefs for the subjective beliefs of the accused. And because I don't follow what you just said. It's a whole bunch of language. Here the jury has to prove beyond a reasonable doubt that the defendant believed. Isn't that talking about the subjective state of mind of the defendant? That the individual was less than 18? No, Your Honor, it does not. And if I could, and I hope that I am able to provide the, my argument properly because it is somewhat confusing. Your Honor, when it states the defendant believed that such individual was less than 18 years of age, the jury has not given any guidance that they need to look at the subjective belief of the defendant. And what the jury can do, as in the Powell case, which this Court said was improper, is that they can put in what the jury's objective beliefs are of what the defendant should know. You're twisting the words here beyond their ordinary meaning. It says the defendant believed. You have to show the defendant believed, not an objective person that the defendant in a man's shoes, you know, would have believed. Prosecution has to prove beyond a reasonable doubt the defendant believed. I don't see how you can get more straightforward than that. You start throwing in words like subjective with jurors, and now you're leading them into the never-never land where they want a thesaurus or a dictionary. Was there another instruction proposed that you could? Yes, Your Honor. What I proposed to the Court was What was that? It's in a It's the Respondent has provided it in what is Respondents 135. I'm sorry, Respondents 134 in their excerpt of record. The instruction I proposed is that Eleventh Circuit in their pattern jury instructions, number 80, has created a special jury instruction for offenses under 18 U.S.C. 2422b. And one part of that, and I broke it down, it's the beginning instruction that Judge Trott was referring to, and the instruction I provided went further. It states, It is not necessary for the government to prove that the individual was, in fact, less than 18 years of age, but it is necessary for the government to prove defendant believed such individual to be under that age. And that's exactly what the Court said. That's redundant to what I'm going to give. With all due respect, Your Honor, I don't believe it's redundant because, as this Court has stated in Meek, it is very, very important and critical to focus on the subjective belief of the defendant. And because of that heightened actual knowledge, I believe it was incumbent upon the district court to provide instructions that related to the subjective belief of the defendant. Isn't it about this that the one that was given is where? The one that was given is in our excerpt of record. It's instruction number 14, page 24. The one that was proposed. The defendant believed that such defendant was less than 18 years of age? Individually, yeah, 30. Yes, Your Honor. And, Your Honor, if I could. Difference between? Your Honor, I think it's a difference. It may be a slight difference, but there is definitely a distinction here based on the facts of this case. The government's position is that once in the chat it was said, I'm 14, the crime was committed. Now, no, that's not the government never said that. The government freely admits it has to prove the state of mind of the defendant is described in that instruction. Your Honor, with all due respect, in their brief they stated in the first 10 minutes of the chat that the crime was committed. And what we have here is it creates strict liability because under the facts of this case, my client was chatting in an adult chat room. And in that adult chat room, and the evidence was clear, you must certify that you're 18 years of age or older to even be in that chat room. And that chat room is an adult chat room for romance. So it's sexually charged in its nature. And so from my – from our perspective, being in that chat room, and all the witnesses, the detective on the case, the FBI case agent, and the expert witness from AOL – I'm sorry, from Yahoo – testified that because this chat room is designed for adults and there are protections to ensure that adults only are within the chat room, then it would be reasonable for a person to believe they are chatting with an adult regardless of the content. And the jury obviously rejected that based on the content of the conversation and the photographs that were sent. Your Honor, I – But that was your defense, and the jury rejected it. Your Honor, they did, and I believe that the jury rejected it because if they were instructed to look at what the defendant subjectively believed and did not put their own objective beliefs to what he should have known, because I think it's important to look at the chats themselves. In the chats themselves, never does IU mention age regarding Marissa. Never in the chats, and it's important to note, once and only once was age mentioned. From that point forward, there was no age-specific discussions, which is very opposite of the Meek case. How old does the girl in the bathing – in the towel look to you? To me, Your Honor, I don't believe that that would be relevant, but I will address the pictures themselves. Arguably, the picture of the girl in the bathing suit is young. That looks to me like she's 9 or 10 years old at the maximum. Your Honor, I would not disagree with your approach, but we need to look also at the other two pictures that were submitted. The cowboy outfit doesn't look much older. Your Honor, I would respectfully disagree, but it's very important, I think, when you look at the pictures, to note that each of the pictures depicts a different age, if you look at it closely, of this person. And I think significant to note is that IU, in the very last chat, actually asks Marissa to send me a picture of how you look now exactly. And so what we have here, Your Honor, in this adult chat room, for adults only, are photographs that are not of the same person and the same age, but shows a broad range of ages. And significant for the Court to note in this is that the jury actually asked a question during the deliberations, over three days of deliberations on two and a half days of testimony, and the jury asked the question, what is the age of, quote, unquote, Marissa in the dress? That evidence was not presented during the trial, and so the jury was not given the age, but the jury was in a quandary because all these different photos were being sent showing different ages. And then we have IU asking at the end, what do you look like exactly today? And it shows there in the subjective beliefs, in the mind of IU, that, as was already stated, it's reasonable to believe that he was chatting with a minor. I mean, I'm sorry, reasonable to believe that he was chatting with an adult and not with a minor because of the nature and content of the chat room itself. But in the very first conversation, what you described as the adult chat room, within 90 seconds of that conversation starting, after she said, anyone want to talk, chat with somebody, a girl in Reno? And he asked, she said, I responded that she would turn 15 in December. And your client said, cool. Isn't that true? That's correct. So within 90 seconds of the whole conversation starting in this adult chat room, suddenly he knew that she was saying she was going to turn 15 in December. Your Honor, no. With all due respect, I disagree. It's an answer to a question in an adult chat room that adults are only allowed to enter. You must be 18 to enter into. That's nice, but everybody knows it's baloney because part of the problem is you get kids entering these chat rooms and they falsify who they are. That's one of the big problems out there now that the society is trying to stop. The chat rooms are loaded with little kids and that's why they're being monitored by the law enforcement agencies. Your Honor, that's correct, but that's also why he says, do you like older guys, about three sentences later. Your Honor, that's correct, but it's important because the government is in essence casting a wide net, as this Court astutely pointed out, that not only are there children entering these chat rooms, there's testimony that there's men posing as women, there's women posing as men. There's the 500-pound man saying, here's my photo, I'm Pamela Anderson. It's not dispositive that it's a chat room that's supposed to be for adults. It's not dispositive, but it goes to the state of mind of IU when he's in these chat rooms that he found a 15-year-old and said, cool. Well, Your Honor, that's... That's an argument for the jury, I suppose. Sure it is. It would be an argument for the jury. All you have to do is raise a doubt. And the jury just couldn't find one. And, Your Honor, I would like now to address... Let me ask one question. You concede that if this happened within 90 seconds, she said she would turn 15 and he says, cool, at that moment, if that's the jury accepts that, that the crime has been committed right then? No, I do not concede that, Your Honor. Why not? Because we must look at the subjective and the entirety of the conversations from that point forward. Never again was any age mentioned. The chats themselves from Marissa are adulting content. She talks about buying thong underwear... I'm not talking about from there on. Right then, he could have been charged and was charged with attempted, right? Your Honor, I asked the detective that question precisely. She stated no. She also stated that when she's in this chat room and putting out this name, that many people say, some people say, oh, too young, I don't want to talk to you. Other people say, continue with the discussions. And there's no, and there's sexual content, but there's no arrest. And some people say cool. And some people say cool and they continue on. I just, I guess I don't get your argument. Are you suggesting, are you saying that there's some, that the jury might have found that he, there was some evidence that he believed that she was 19 or 20? I believe the jury could have found that he had a belief that he was chatting with an adult. As he stated, after he was arrested... You could argue that to the jury. I guess I just... And, Your Honor, this is the problem with these cases, as Judge Trott mentioned, there's a heightened awareness of these cases in our community now because of the, quote-unquote, creditors on the Internet. But we have to look at the entirety of the facts in order for the jury to be able to make that determination. I'm just trying to figure out what happened to your client that was unfair here. Did the district, did the court do something wrong? You said that the instruction should have been clearer. It is not necessary, but it is necessary, you know, a little different emphasis. But ultimately, the question for the jury was whether or not there was a reasonable doubt that he thought he was talking to somebody under 18. Isn't that... That is the question, but it's not, did the jury think it? No. It should be, did IU believe... And he, yeah, the defendant. The defendant. Correct. That's what I'm talking about. But because the instructions were not given, and we went a little further in our briefing... But was it that the jury was allowed to think that was incorrect? The jury... I had to be shown. The jury was allowed to, as in the Powell case, to substitute their objective findings for what was the subjective evidence as presented through the chats and through IU's testimony. Are you going to say anything about entrapment? I would like to, Your Honor. Okay. Your Honor, further, the evidence clearly supports and we understand the burden after a de novo review that this Court must find an entrapment, whether or not a jury, reasonable jury, would have found in favor of the defendant or no reasonable jury would have found them. The government failed, and a reasonable jury in a case not so charged with all of the issues that Judge Trott talked about would have found that IU was entrapped because, one, the government failed to show he was not predisposed to commit this offense. How can you say that when he's saying within 90 seconds, or he's suggesting sexual acts in that very first conversation? Your Honor, predisposition, you must look at the state as in Pullman and Jacobson state that you have to view not the acts at the time, you have to look at prior to the government contact, what is the state of the mind of the defendant? What about that other girl that he was in, so-called girl that he was in conversation with, the other evidence, the other case? There was no other case, but if you're referring to the other detective, again, we have government. Right, the other detective. Again, that's government contact, and so we have to look at the state of mind prior to the government contact with him, and there is no showing that IU did anything other than chat in an adult chat room. And as Jacobson states, evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition. Many character witnesses testified on behalf of IU that he had no inclination to like young children, that he was truthful. Also, his post-arrest statements, which are relevant if towards the predisposition was, she was 18. He constantly stated, this was an 18-year-old. He never stated, you've caught me, you're right, I was going to be with a minor, which is the type of cases we often see in the Meek case and Criswell out of the Sixth Circuit and Thomas out of the Tenth Circuit. And then the other thing that the court must view and look at is the inducement by the government to have IU show up. There were 11 Internet chats. Eight of these Internet chats were initiated by the government. None of those conversations from the government did they talk about or bring up the subject of sex. They did not bring up the discussion of sex, but the discussion from the government was sexual in nature. The government agent admitted that she had performed fellatio, admitted to her sexual likes and dislikes. After being asked by your client. But she went on to talk about that. And more importantly, though, Your Honor, is that the government agent in their inducement, let it be known through their statements such as, I'm tired of you blowing me off, if you don't talk to me, I don't need things of this nature in my life, that it shows that they were inducing, like in Pullman, there was inducement by commission. In IU, there's inducement by inference. If you don't meet with me, if we don't talk about these things, then I don't want to chat with you anymore. You're saying as a matter of law, there's inducement, right? Yes, Your Honor. You're not saying that the jury could, are you saying there's no reasonable evidence the jury could rely on? That the jury's wrong? Your Honor, if the jury had been properly instructed that it's the subjective beliefs of IU, then the jury would be able to take out these objective statements and look at what IU said. And it's important that IU never said things such as Meek did, that I can't wait to be with a 10-year-old boy. Or as in Criswell, is your age true because I want to be with a younger person? None of that was ever said. Nothing was age-specific in any of the chats. Is that a requirement? I don't know. Your Honor, it's not an offense. Well, Your Honor, I believe it goes to the subjective beliefs of IU and whether or not he is, believes he is chatting with a minor. And when you look at the totality of all the facts and circumstances, that the evidence is clear that he was not because he never said things of that nature. Okay. Thank you. Thank you. Paul Puglisi. Judges of the Court, counsel, good morning. I'm Paul Puglisi, Assistant U.S. Attorney from the District of Nevada. I represent the plaintiff, Appelli, in this case. Opposing counsel has done a great job at trial in combing the evidence to find any inconsistencies in the government's presentation on appeal, identifying any discrepancies in the evidence presented, testimony, to establish that the government did not meet its burden of proving knowledge and indicating that the government failed to meet its burden in establishing that the defendant was not entrapped. The government concedes that this was not the perfect government presentation, but the law doesn't require a government perfect presentation. It requires beyond a reasonable doubt. And 12 jurors agreed in this case that the evidence established all the requisite elements beyond a reasonable doubt. In terms of the knowledge requirement, the Meeks case has been brought up. And in Meeks, the standard set was, could a jury reasonably infer that the defendant knowingly sought sexual activity, one? Well, the element that was presented, it was element two in the judge's instructions on the offense, was that the defendant knowingly intended to persuade or induce or knowingly persuaded, induced, enticed a minor with the intent to engage in sexual activity. Meeks went on to say that could the jury reasonably infer the defendant knowingly sought such sexual activity with a minor? And the third element of jury instructions in this case was that the defendant believed that the individual was under the age of 18. Nowhere does it say that an objective person or a reasonable person has to have this belief. The instructions that were provided were specific. The defendant had to knowingly intend to do something and know that the individual he was communicating with was under the age of 18. Aside from the instructions, just on the knowledge element, the defendant has done a good job of pointing out that, hey, there's – there could be another interpretation here. Hey, you know, my grandmother doesn't drive because she's too old. So just the statement that you don't drive doesn't mean you're necessarily a minor. But when you couple that with all the statements made about not driving, I have to sneak out, my parents will be home soon, can't talk on the phone now, my sister may catch me, I have chores to do, I have homework, I've got to go with my parents to Sacramento to visit my – my uncle, I'll be 15 in December, and then within a matter of minutes, sending a picture of that cowgirl, she's a cowgirl, that looks like a cowgirl, a girl that's under the age of 18. Then the next photo that's sent is a girl standing next to a pool that doesn't in any way look like anyone who's even close to the age of 18. There was some debate about the third photo sent. Again, I have to sneak Again, not a perfect case. Is that the photo you want to send to show that this was a minor? Eh, maybe not. Why did you send it? Well, we didn't have any other photos that didn't show family members of our undercover detective when she was 14. Supplemental excerpt of record, trial testimony, 119 supplemental excerpt of record indicates the first two photos were taken when the undercover Michelle Oberg was 14. The third one was taken when she was 15. And in the trial testimony, Detective Hayden indicated that during the chat, she stated, I was trying to look all grown up, wearing heels, about broke my ankle. In terms of the entrapment argument that's been – Before you leave that, what about that she started out, the conversation or the chat started out in an adult chat room, and therefore, he didn't think he was in a child chat room, therefore, the case should be reversed. What's wrong with that argument? Well, one problem with the argument is evidence was presented, instead of just relying on the juror's common knowledge of the ways of the world, Detective Hayden stated that it was common for children to lie and be in adult chat rooms. So that evidence was before the jury. Aside from that, the defendant was specifically told, first, okay, maybe this isn't clear, but anyone want to chat with a girl in Reno, and then within several minutes, you're advised, or the individual chatting with Marissa is advised, be 15 in December, and then within two to three minutes after that, gets a photo of a young girl in a cowgirl outfit with a horse. And at that point, the defendant was on notice that, hey, this is a kid. This is a minor, isn't it? The defendant was how old? Twenty-two. And he got how much? What was the sentence here? Sixty months. I think the mandatory minimum is 60, but for some reason, 63 months may have been the bottom of the guideline. Mandatory minimum is 60. Mandatory minimum is 60, yes, Your Honor. You know, one wonders why all the – is there anything here that would indicate that this was – that this fellow was a particular target of the government? No. In fact, the reason he was identified, or maybe given a little closer look, was Detective Herrera, a year earlier, playing a role of a girl named Amanda, had chatted with an individual, and the photograph that was sent in response was of an erect penis. So he was having a discussion with Detective Kelly Hayden around the time she started chatting with this same I'm Wasted 69, who had given the same cell phone number, but more importantly, had sent the same photo. So when they started showing and Herrera saw the photo, he said, hey, I chatted with that guy, same guy last year, somebody who sent me the same picture, and then provided the chats, the two chats that he had saved to Detective Hayden, and there was an indication that, hey, it's the same individual and he's doing the same thing, which is, after being notified, that the individual – I believe, in the first case, it was either 14 or 15 years old. It wasn't in the transcript of the chat – of the instant message communication. It was in the chat room, initially, where Detective Herrera said, anyone want to chat with a, you know, I believe a 14 or 15-year-old in Reno? And defendant did bring out that no evidence that this individual was a pedophile and really no evidence that this individual, Omar Ayyub, was a predator. But, you know, in light of some recent Ninth Circuit cases, you know, I'm not sure what the government could have gotten in with regard to prior bad acts of the defendant. But the – that's not an element of the offense. Meaning is not an element of the offense. Proving that he was a pedophile wasn't an element of the offense. In this case, it was clear that this was an individual who was very sexually active, and, as explained to the jurors, there were no throwbacks. Anyone who responded to his initial message of, do you want to see a picture of either my dick or other word to describe that, very few responses. And when he got a response, he chatted. Regardless of who it was with, at one point on October 31st of 2003, it was with an individual who claimed she was 15. When she responded, no, pervert, I'm only 15, his response was, so, so, do you like big dicks? It was clear that this was an individual who was – perhaps he wasn't targeting individuals who were minors, but his conduct reflected an individual who was willing to coerce, induce, persuade a minor if they responded to his invitation to engage in sexual activity. And one – just one other comment, just on the entrapment defense. It's true that the government has to show that the predisposition occurred prior to government contact, but the evidence is not limited to prior to government contact. It's really prior to or untainted by government inducement. And that's in both the Tucker case in the Ninth Circuit and the Jacobson case. There can be evidence, and it's clear that there were no inducements, provided when Detective Herrera, as Amanda chatted a year earlier, and really no inducements prior to the defendant engaging in all these sexual chats he had with the alleged 14-year-old in this case after being notified she was a minor. Thank you. Thank you. Do you have any time left? No. Your Honor, I was going to say I'd like to rebut, but I do not have any time left. Well, that's fine. And that case just argued is submitted. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Trott, Rhoades